IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Michelle N. McJunkin,

Plaintiff,

vs.

City of Travelers Rest, South Carolina; Tim D. Christy; Dianna Gracely,

Defendants.

Civil Action No. 6:06-0634-HFF-WMC

**REPORT OF MAGISTRATE JUDGE**

This matter is before the court on the parties' motions for summary judgment. The plaintiff, who is represented by counsel, alleges in her complaint that the defendants violated her constitutional rights to free speech and procedural due process. She also alleges a state law claim for wrongful discharge.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

On July 19, 2001, the plaintiff was hired by the City of Travelers Rest Police Department as a law enforcement officer (comp. ¶ 10). The plaintiff served in this capacity until she was promoted to sergeant late in 2003 (pl. dep. 14). When the captain's position came open in the Department, the plaintiff applied for the position. She was not selected; Lance Crowe, formerly an employee of the Spartanburg County Sheriff's Office, was hired for the captain's position. As a sergeant, the plaintiff reported directly to Captain Crowe.

The plaintiff remained employed as a sergeant with the Department until her employment was terminated on May 24, 2005 (pl. dep. 94). At all times during her employment, the plaintiff was employed by the Department as an at-will employee (*see* pl. reply to m.s.j., stipulation 5).

As part of his duties, Captain Lance Crowe scheduled a meeting with all sergeants employed by the Department to discuss issues raised by the sergeants and issues relating to operation of the Department (pl. dep. 37-38). The meeting was scheduled by Captain Crowe for May 23, 2005. All three sergeants employed by the Department – Glenn Tuttle, Larry Pruitt, and the plaintiff – attended the scheduled meeting. Defendant Tim D. Christy, the Police Chief, joined the meeting after it started (pl. dep. 47-49). Numerous topics were raised by Captain Crowe and were discussed in the meeting. These topics included communication and the exchange of information between shifts, cleaning of patrol cars, possible pay raises, and a possible casual dress day (pl. dep 48-49, 53-54).

During the sergeants' meeting, the plaintiff voiced numerous complaints about several issues involving Officer Steve Hannon, a patrol officer employed by the Department who reported to Sergeant Larry Pruitt, as well as issues involving operation of the Department. Specifically, the plaintiff repeatedly complained about Officer Hannon's investigation of an incident involving the theft of a moped (pl. dep. 50). The plaintiff's complaints dealt with an incident that occurred on Sunday, May 22, 2005. While working in the Department, the plaintiff received a complaint from a man who desired to press charges against two children who had stolen his moped (pl. dep. 31). The plaintiff was not aware of the incident, which had occurred on the prior night's shift. When the plaintiff inquired, she discovered that Officer Hannon had previously responded to a call involving the moped theft, but he had not filed a report (pl. dep. 31-32). The plaintiff called Officer Hannon at home and asked why he had failed to file a report concerning the incident (pl. dep. 32-33). During the call, Officer Hannon explained that he did not make an arrest or

seize the moped because the moped was stolen by two children, and he did not feel that making an arrest was warranted. Instead, Officer Hannon called the children's parents, who agreed to return the moped (pl. dep. 31). Officer Hannon felt that he had adequately resolved the issue and did not feel like a report was necessary. The plaintiff scolded Officer Hannon based upon her opinion that he had failed to follow proper protocol by arresting the children and seizing the property (pl. dep. 33, 73). After the plaintiff's temper escalated, Officer Hannon hung up on her. When Officer Hannon did not immediately call her back, the plaintiff called Officer Hannon again (pl. dep. 34).

After their second conversation, the dispatcher told the plaintiff that Officer Hannon had called asking for Chief Christy's phone number (pl. dep. 35). The plaintiff was angry that Officer Hannon was breaking the chain of command, so she called defendant Christy so he could hear about the incident from her (pl. dep. 36). After her conversation with Chief Christy, the dispatcher told the plaintiff that Officer Hannon had just called for Captain Crowe's phone number. Again, the plaintiff felt that she needed to tell her view of events to Captain Crowe, so she called Captain Crowe at home (pl. dep. 35). After an extended call complaining about Officer Hannon's conduct, Captain Crowe told the plaintiff that they would discuss the issues that she raised at the sergeants' meeting scheduled for the following day (pl. dep. 37).

During the sergeants' meeting, the plaintiff resumed her complaints about Officer Hannon. The plaintiff particularly objected to Officer Hannon calling Captain Crowe and defendant Christy (pl. dep. 34-35). The plaintiff further complained that Officer Hannon failed to follow protocol because he did not seize the stolen moped and return it to the victim (pl. dep. 31). The plaintiff continued to complain that Officer Hannon had not filed a report to inform her and the other officers on the next shift of the incident so that they could follow up with the victim (pl. dep. 31). In response to the plaintiff's repeated complaints, Chief Christy and Captain Crowe told her that such situations had to be handled

on a case-by-case basis and that they felt that Officer Hannon should have prepared a report but otherwise had properly handled the situation (pl. dep. 58). The plaintiff was not satisfied with the response from Chief Christy and Captain Crowe and raised other complaints relating to Officer Hannon. Among other things, the plaintiff complained that Officer Hannon was paid more than she was (pl. dep. 51). She complained that Officer Hannon allowed another female officer drive a car that he owned (pl. dep. 43). She complained that the car had dealer plates and did not have proper tags. She suggested that Officer Hannon and the female officer were dating (pl. dep. 45).

The plaintiff also complained that dispatch had recently failed to answer several calls from officers (pl. dep. 71). Captain Crowe and defendant Christy informed her that they would bring her complaints to the attention of the head of dispatch (pl. dep. 72). Chief Christy then dismissed the other sergeants from the meeting (pl. dep. 72). Captain Crowe and Chief Christy continued to address the plaintiff's complaints about Officer Hannon (pl. dep. 73). They again advised her that they felt that Officer Hannon had handled the situation properly by not arresting the children, but that Officer Hannon should have filed a report concerning the incident (pl. dep. 73). The plaintiff continued to argue that the situation was not handled properly (pl. dep. 61). Defendant Christy repeatedly told the plaintiff that similar matters should be handled on a case-by-case basis because there was no precise protocol for such situations (pl. dep. 73-74). In response to her many complaints about Officer Hannon, defendant Christy stated that he and Captain Crowe did not feel that Officer Hannon's conduct warranted further disciplinary action (pl. dep. 73). Defendant Christy also stated that the plaintiff had overreacted and had "browbeaten" Officer Hannon during their Sunday telephone conversations (pl. dep. 73).

The plaintiff then complained that Captain Crowe had taken vacation time to go see the new Star Wars movie when she felt that he should have stayed at the Department to conduct an investigation into some business burglaries (pl. dep. 62). Chief

Christy told the plaintiff that if he could not satisfy her complaints she should consider looking for another job (pl. dep. 74). The plaintiff told the Chief that he had lost control of the Police Department, and he should look for another job (pl. dep. 76-77). The plaintiff told Chief Christy and Captain Crowe that she could "write a book" about all the improper conduct that had taken place within the Department (pl. dep. 77). The plaintiff became so upset that she could not work her shift that day. She asked for and was granted permission by Chief Christy for the rest of the day off (pl. dep. 78). The plaintiff was so upset that she could not sleep that night and was unable to return to work the next day (pl. dep. 80).

On the following morning, May 24, 2005, the plaintiff called Chief Christy on his cell phone to ask permission to miss her scheduled training that morning (pl. dep. 81). The plaintiff was still very upset. The plaintiff told Chief Christy that he did not adequately investigate Captain Crowe's qualifications before hiring him (pl. dep. 84). She stated that Chief Christy had told her that Captain Crowe had experience writing grants, but that Captain Crowe had told her that he did not have any such experience (pl. dep. 84).

The plaintiff complained that Chief Christy had told her that Captain Crowe had been a lieutenant with the Spartanburg County Sheriff's Office, when she knew that he had been demoted by the new sheriff (pl. dep. 85). She contended that Captain Crowe was a liar because he had stated in the sergeants' meeting that he had talked with her for 30 minutes on the telephone about the Hannon incident and she knew that the call was less than 30 minutes. The plaintiff then accused defendant Christy of having an affair with an unnamed employee of the Police Department (pl. dep. 89-90). The plaintiff further alleged that Chief Christy and Captain Crowe were attempting to cover up certain incidents within the Department (pl. dep. 91). Specifically, the plaintiff stated that Chief Christy and Captain Crowe disagreed with her about the proper heading on an incident report, telling her that it was not an attempted burglary but instead should be a report of a suspicious person (pl. dep. 92). Defendant Christy informed the plaintiff that her employment was terminated (pl.

dep. 94). The plaintiff called Chief Christy again to see if he really meant to terminate her employment (pl. dep. 93). He advised her that he did. By letter dated May 24, 2005, Chief Christy confirmed that the plaintiff's employment was terminated for insubordination (pl. dep. 86, ex. 1).

The City of Travelers Rest Employee Handbook allows an employee to request a grievance hearing before the City Administrator who shall act as the grievance committee (pl. dep., ex. 2 at p. 30 §6-2-1). The Employee Handbook adopted by the City of Travelers Rest provides in relevant part as follows:

> [An employee] may submit a written request to the City Administrator for a hearing before the City Administrator. The City Administrator has the authority and discretion to call for files, records, and papers pertinent to any investigation; to determine the order of the testimony and the appearance of witnesses; to call additional witnesses; and to secure the services of a recording secretary. Repetitive, cumulate, or irrelevant testimony will not be allowed and the scope of the hearing shall be narrowly limited to the specific subject of the grievance. The City Administrator will make a report of its findings and decisions with twenty (20) days of the hearing. The City Administrator's decision is final.

(Pl. dep., ex. 2 at p. 31 §6-2-2).

By letter to defendant City Administrator Dianna Gracely dated May 27, 2005, the plaintiff requested a grievance hearing (pl. dep., ex. 4). In her letter, the plaintiff asked for City Council members Pat Crain and Richard Penland to be present at the hearing (pl. dep. 127, ex. 4). Defendant Gracely granted the plaintiff's request for a grievance hearing but denied her request for the two City Council members be present because it did not comply with the current policies and procedures of the City of Travelers Rest (pl. dep. 134, ex. 7).

The grievance hearing was held on June 15, 2005 (pl. dep. 130, ex. 8). The plaintiff, Administrator Gracely, and Ms. Braziel, the City Clerk, attended (pl. dep. 130). The plaintiff read from and submitted a written statement regarding her position. The plaintiff

did not bring any witnesses or present any other testimony (Gracely dep. 14). Gracely considered the plaintiff's oral and written statement as well as written statements from Chief Christy and Captain Crowe (Gracely dep. 34). By letter dated June 21, 2005, Administrator Gracely upheld the termination of the plaintiff's employment for insubordination (pl. dep. 4, ex. 6).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

***Plaintiff's Motion for Summary Judgment***

The plaintiff has moved for summary judgment as to liability only on her procedural due process claim, which is alleged against defendants City of Travelers Rest and Gracely (pl. resp. m.s.j., stipulations 7, 8). In her complaint, the plaintiff alleges that her procedural due process rights under the South Carolina (Art. 1, § 3) and United States Constitutions were violated because defendant Gracely conducted her grievance hearing instead of a committee of at least three persons as required under state statute (comp. ¶ 35).

Defendant City of Travelers Rest's Employee Grievance Procedure "is adopted in accordance with the 'County and Municipal Employees Grievance Procedure Act', Section 8-17-110, et seq., Code of Laws of South Carolina, 1976, as amended" (pl. m.s.j., ex. 2, § 6-2.) The County and Municipal Employees Grievance Procedure Act ("the

Act") provides: "The governing body of each county and incorporated municipality which elects to establish an employee grievance procedure pursuant to this Article shall appoint a committee of not less than three . . . members. . . . A quorum shall consist of at least 2/3 of the committee members, and no hearings may be held without a quorum." S.C. Code Ann. § 8-17-130. The defendant City's Employee Grievance Procedure provides that "[t]he City Administrator shall act as the Grievance Committee" (pl. m.s.j., ex. 2, § 6-2-1).

The plaintiff argues that the City's grievance procedure departs materially, substantially, and unlawfully from the state law mandate in the following particulars: (1) the City Administrator acts as a grievance committee of one (pl. m.s.j., ex. 2, § 6-2-1); (2) the City Administrator has authority to conduct an investigation (pl. m.s.j., ex. 1, § 6-2-2); (3) the City Administrator's decision is final (pl. m.s.j., ex. 1, § 6-2-2); and (4) the City Administrator will make a final administrative review of each employee's separation (pl. m.s.j., ex. 3, § 3-6-3).

The defendants argue that the plaintiff's claim that she was denied procedural due process because her grievance was considered by Administrator Gracely rather than a three-member committee is flawed because she cannot prove that she was deprived of a liberty or property interest necessary to support her claim. *Board of Regents v. Roth*, 408 U.S. 564, 569-579 (1971). The defendants contend that there is no general property interest in continued employment where an employee, like the plaintiff here, is employed at-will.

The United States Supreme Court has recognized that in such instance, a property interest in employment can only "be created by ordinance, or by an implied contract." In addressing this issue, this court must consider state law. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). South Carolina recognizes the doctrine of employment at-will. *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 216 (S.C. 1985). There is no ordinance or other statute that gives the plaintiff any expectation of continued employment

by the City of Travelers Rest Police Department nor was any implied contract of employment created under South Carolina law.

In *Beckham v. Harris*, 756 F.2d 1032 (4th Cir. 1985), the court found that Beckham did not have a property interest in his continued employment because he was an at- will employee. In that case, Beckham was fired by his superior officer for submitting false information in an incident report and arrest warrant. In the arrest warrant, Beckham falsely stated that he had seen the individual arrested at the Ship's Wheel Seafood Restaurant where they had been informed he was trafficking illegal drugs. However, Beckham refused to perjure himself at trial by testifying to the false statement. He was subsequently discharged from the police department. In rejecting Beckham's due process claim, the court held that Beckham did not have a property or liberty interest to entitle him to due process. The court held that state law provided that Beckham served at the "pleasure of the commission" and was an at-will employee that did not have a property or liberty interest in his continued employment. *Id.* at 1037-38. In this case, it is uncontested that the plaintiff was employed at-will (pl. resp. m.s.j., stipulation 5). The plaintiff had no employment agreement, and she admitted receiving and signing a clear acknowledgment of her at-will status.

The plaintiff contends that because the grievance procedure of the City of Travelers Rest does not comply with the South Carolina County and Municipal Employees Grievance Procedure Act, her constitutional rights were violated, and she is entitled to monetary damages. S.C. Code Ann. § 8-17-110 *et seq*. The Court of Appeals for the Fourth Circuit addressed a similar due process claim in *Bunting v. City of Columbia*, 639 F.2d 1090 (4th Cir. 1981). In *Bunting*, two plaintiffs were terminated from the city police department after eight months of service. he plaintiffs requested a grievance hearing, which was denied because the city's grievance procedure did not permit grievance hearings for employees who had been employed for less than 12 months. The court noted that the

city's grievance procedure did not substantially comply with the Act because it required a longer period of employment than the Act permitted before the employee could request a grievance hearing. Despite this, the court held that the plaintiffs could not assert a valid claim for violation of their due process rights. The court held that the plaintiffs were not entitled to due process protection because as at-will employees they lacked a property or liberty interest in their continued employment. *Id.* at 1095. The court remanded for a grievance hearing. The court found that remand was the appropriate remedy and rejected the plaintiffs' claims for attorney's fees pursuant to 42 U.S.C. § 1988. *Id.*

In *Baxley v. City of North Charleston*, 533 F.Supp. 1248 (D.S.C. 1982), the United States District Court for the District of South Carolina granted a motion for summary judgment in a case involving a similar claim. In that case, Baxley, the Chief of Detectives for the North Charleston Police Department, informed his supervising officers of his intention to run for Solicitor for the Ninth Judicial Circuit of South Carolina. Baxley asked to use two weeks of vacation time to campaign prior to the preliminary election. On May 5, 1980, Baxley was placed on forced annual leave and instructed to return on May 23, 1980, to be advised of his further duties. Baxley subsequently filed a grievance concerning the forced annual leave. The tapes from the meeting were misplaced prior to the committee's decision. On May 20, 1980, Baxley was ordered to report to the police station for a polygraph regarding the missing tapes. Baxley refused the polygraph examination without his counsel being present, and he was terminated from employment. Baxley then filed suit pursuant to 42 U.S.C. §§ 1983 and 1985, alleging violation of his constitutional rights to due process and right to counsel. After Baxley was terminated from employment, he requested a grievance hearing in compliance with S.C. Code § 8-17-110 *et seq.* This request was rejected and he was granted a hearing in accordance with the City's current policies and procedures. At that time, the City of North Charleston's grievance procedure provided that all grievance hearings would be heard and decided by the mayor. In an attempt to prevent

the hearing according to the city's policies, Baxley filed a motion to show cause in state court seeking a declaration that the grievance procedure was null and void. In its decision, the state court held that the city was not obligated to adopt any grievance policy. The state court held that the policy adopted by the City of North Charleston failed to substantially comply with the Act, and the City therefore effectively did not have a grievance procedure. In addressing his Section 1983 claim for the violation of his right to due process, the district court found that Baxley did not have a property or liberty interest in his continued employment to warrant due process protection because under South Carolina law he was an at-will employee who was capable of being terminated at the pleasure of his employer. *Id.* at 1253-54. The court further determined that there could be no due process violation for the denial of a grievance hearing in accordance to the State's requirements because the City no longer had an enforceable grievance procedure.

Based upon the foregoing, the plaintiff here was an at-will employee who had no property or liberty interest in her continued employment. Accordingly, her procedural due process claim fails.

In her motion for summary judgment, the plaintiff also argues that the City and Gracely are liable for the violation of her rights under Article I, Section 22 of the South Carolina Constitution and under the South Carolina Administrative Procedures Act. However, as argued by the defendants, these claims were not raised in the plaintiff's complaint, and the claims are not properly before this court. The plaintiff's attempt to inject this new claim at this late date comes too late. *See Witt v. American Trucking Ass'ns, Inc.*, 860 F.Supp. 295, 304-306 (D.S.C. 1994) (denying a request to amend the complaint because the discovery deadline had passed, and the opposing side had fully briefed its motion for summary judgment based on the initial pleadings and the related discovery). Accordingly, the plaintiff's motion under this new theory should be denied.

***Defendants' Motions for Summary Judgment***

The defendants have moved for summary judgment on all the plaintiff's claims.

**Free Speech**

The plaintiff alleges that defendants Christy, Gracely, and the City violated her right to free speech by terminating her employment after she reported matters of public safety and concern (pl. resp. m.s.j., stipulations 6-8). The defendants argue that the plaintiff's speech is not protected under the First Amendment. In order to prevail on a First Amendment retaliation claim, the plaintiff must show that (1) she engaged in protected expression regarding a matter of public concern; (2) her interest in First Amendment expression outweighs her employer's interests in efficient operation of the workplace; (3) she was deprived of some valuable benefit; and (4) a causal relationship exists between her protected expression on matters of public concern and the loss of the benefit. *Peters v. Jenny*, 327 F.3d 307, 322 (4th Cir. 2003). Specifically, the plaintiff alleges that she reported the following matters of public safety and concern:

> (1) A city police officer (Hannon) was informed that a woman was being harassed by a person who was violating an Order of Restraint, but the police officer failed to enforce the Restraining Order (pl. dep. 21-22);
>
> (2) a city police officer (Hannon) was informed by a Motel Clerk that two men were in a confrontation in the Lobby, that one of those men had a firearm. The police officer (Hannon) made no arrest and did not confiscate the weapon (pl. dep. 22-24, 26);
>
> (3) a city police officer (Hannon) discovered that juveniles had unlawfully stolen two mopeds. The juveniles confessed to the crime. The police officer returned the stolen mopeds to the thieves' parents, not the owner. He made no arrest and made no report as required by the Police Department Rules. The owner complained to the plaintiff (pl. dep. 30-34, 58);

> (4) fraternizing among married and unmarried police officers on duty was impairing the efficiency of the Police Department and threatening the safety of the community (*see* Luanne East dep. 5, 8-20);
>
> (5) defendant Chief of Police Christy was engaged in a liaison with a radio dispatcher; the sexual affair affected the morals and efficiency of the Police Department (pl. dep.69-70, 72, 89, 90);
>
> (6) defendant Chief of Police Christy's illicit relationship with a radio dispatcher impaired his authority or ability to enforce community safety violations against Officer Hannon who also had an illicit relationship with one Officer Hinton (pl. dep. 39-44);
>
> (7) the plaintiff investigated a motor vehicle collision with head injuries involving teenage boys at or about 2:00-3:00 a.m. The plaintiff called for backup. Officer Hannon arrived at the scene, but never exited his vehicle to assist at the scene in spite of the plaintiff's repeated requests for help (pl. dep. 27-29);
>
> (8) the senior officer on duty failed to assist in the investigation of multiple business burglaries (pl. dep. 61-63);
> 9. Two police officers had a physical confrontation over fraternizing with females, and one of the officers put his sidearm into his mouth (pl. dep. 70,150); and
>
> (9) the plaintiff had been directed by her employer to falsify a burglary report to avoid freedom of information inquiries (pl. dep. 91-92).

(Pl. resp. m.s.j. 3-4).

Assuming for purposes of this motion that the plaintiff's speech regarded matters of public concern, her interest as a citizen in commenting upon matters of public concern must be weighed against the City's interest in maintaining discipline and efficiency within the police department. *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004). This test requires that the court consider "'whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the

performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 247-48 (4th Cir. 1999) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).

When considering the second prong of this test, this court should consider the circumstances and the environment of police departments. Police departments are "paramilitary organizations and the free speech rights of employees in those departments must be evaluated with the special character of the organization in mind." *Jurgenson v. Fairfax County, Virginia*, 745 F.2d 868, 880 (4th Cir. 1984). In particular, courts have found that although speech may involve matters of public concern, employers are not required to tolerate action that disrupts the functioning of the office, undermines superiors' authority, or harms close working relationships. *Connick v. Myers*, 461 U.S. 138, 154 (1983).

In *Cooper v. Johnson*, 590 F.2d 559 (4th Cir. 1979), the court addressed the issue of discipline within a police department and found that the plaintiff's speech was not protected. Cooper was discharged from the police department after showing the Sheriff a letter he had written to the local newspaper concerning an investigation of a theft of antiques. The court based its decision on the fact that Cooper's interest in speaking on this issue was outweighed by the interest of the Sheriff in promoting discipline within the police department. The court noted that the police department was a small organization in which "mutual confidence and co-operation are essential." The court further noted that Cooper's actions would have a "disruptive effect at the very least, in attitudes toward Investigator Mills." *Id.* at 562.

Similarly, in finding that the plaintiff's speech was not protected, the court in *Jurgensen*,745 F.2d 868, found that the "paramilitary" characteristics of a police department required a greater amount of discipline. In that case, the plaintiff disclosed to a reporter a report of internal administrative matters relating to a recent audit of the police department. The report listed a number of deficiencies within the department including a lack of staffing.

As a result of this disclosure, the plaintiff received a demotion. He filed suit, claiming that his disclosure of the deficiencies within the department was protected speech. In rejecting his claim, the court found that a demotion was justified because the disclosure of the report was an act of insubordination. The court found that the department's regulation of the release of such reports was valid. *Id.* at 887.

As argued by the defendants, it is clear in this case that the plaintiff's speech is not protected. The evidence shows the plaintiff's interests in expressing her complaints are outweighed by the City of Travelers Rest's interests in maintaining discipline within the Police Department. The City of Travelers Rest Police Department is a small department that depends on mutual confidence and cooperation. The plaintiff's speech was of such an inflammatory nature that it is clear that it would have caused discord. It is also clear that the content of the plaintiff's speech could undermine the authority of Captain Crowe and Chief Christy. The defendants are not required to tolerate acts of clear insubordination. In the present case, the defendants' interest in maintaining discipline and efficiency of the Travelers Rest Police Department significantly outweigh any interest the plaintiff had in expressing her complaints.

The defendants next argue that the City is entitled to municipal immunity from liability on this claim. Under Section 1983, liability of a governmental body arises only when execution of a government's policy or custom inflicts a constitutional injury. *Proffit v. District of Columbia*, 790 F. Supp. 304, 309 (D. D.C. 1991). Three conditions must be satisfied before liability attaches:

> (1) only acts which the government has officially sanctioned may give rise to liability;
>
> (2) only those officials who have final policymaking authority may, by their actions, subject the government to liability; and

> (3) the challenged action must have been taken pursuant to a policy adopted by the officials responsible under state law for making policy in that area of the government's business.

*Id.*

In *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 695 (1978), female employees of the Department of Social Services and the Board of Education of the City of New York brought an action challenging the policies of those bodies in requiring pregnant employees to take unpaid leaves of absence before those leaves were required for medical reasons. The Court held that official policy must be "the moving force of the constitutional violation" in order to establish the liability of a government body under Section 1983. *Id.* at 694.

Local governments may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels. *Id.* at 690–91. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983. *Id.* Municipal custom will arise where a course of conduct, though not formally approved through official channels, is so permanent and well settled as to virtually constitute law. *Id.* A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Monell*, 436 U.S. at 690.

As argued by the defendants, the plaintiff's claim in this case is deficient because there is no evidence of any policy or custom attributable to the City of Travelers

Rest. Here, as in *Kirby v. City of Elizabeth City*, 388 F.3d 440, 450-51 (4th Cir. 2004) (holding that because plaintiff failed to show that city officials with policymaking authority and final authority over employment decisions based their findings on a retaliatory motive, the plaintiff failed to prove an injury attributable to a city custom or policy, and the city could not be held liable), the plaintiff's employment was terminated by her superior officer. It is uncontested that Chief Christy's decision does not constitute a custom, policy, or practice of the City. Instead, Administrator Gracely had the authority to overturn the termination through the grievance process. While Administrator Gracely upheld the termination of the plaintiff's employment, there is no evidence that she approved of any retaliation against the plaintiff. There is no evidence that any custom, policy, or practice of the City of Travelers Rest was the moving force behind the plaintiff's termination.

Based upon the foregoing, the defendants are entitled to summary judgment as a matter of law on this claim.

**Procedural Due Process**

The plaintiff's claim for violation of her right to procedural due process is alleged against defendants Gracely and the City (pl. resp. m.s.j., stipulations 7, 8). For the reasons set forth above in consideration of the plaintiff's motion for summary judgment, the defendants' motions for summary judgment on the procedural due process claim should be granted.

**Wrongful Discharge**

The plaintiff alleges a state law claim for wrongful discharge against defendants Chief Christy and the City (pl. resp. m.s.j., stipulation 6). South Carolina first recognized a tort claim for wrongful discharge in violation of public policy in *Ludwick*, 337 S.E.2d 213. In that case, the South Carolina Supreme Court held that if an at-will employee

is discharged in violation of a clear mandate of public policy, a tort claim will lie. However, the court expressly found that a violation of a clear mandate of public policy occurs when an employer requires an employee, as a condition of retaining employment, to violate the law – in that case the plaintiff was terminated for honoring a subpoena. *Id.* at 216.

Subsequent South Carolina cases that have addressed similar public policy tort claims have limited them to retaliatory discharge (1) cases where the employer requires the employee to violate the law, or (2) cases where the reason for the employee's termination is itself is a violation of criminal law. *Southern Glass & Plastics Co. v. 29 Duke*, 626 S.E.2d 19, 24 (S.C. Ct. App. 2006) (employer withheld disputed wages which was not a violation of the Payment of Wages Act and grant of summary judgment of wrongful discharge claim was affirmed); *Antley v. Shepard*, 532 S.E.2d 294 (S.C. Ct. App. 2001) (court affirmed the grant of summary judgment in favor of defendants because there was no instruction to employee to violate the law, regardless of whether she believed that the instruction was erroneous); *Lawson v. South Carolina Department of Corrections*, 532 S.E.2d 259, 261 (S.C. 2000) (court affirmed the grant of summary judgment to the Department; "Appellant was not asked to violate the law and his termination did not violate criminal law.").

In her wrongful discharge claim, the plaintiff alleges that she was terminated because Chief Christy was trying to cover up his misconduct (presumably his alleged affair with a dispatcher) and poor management of the Department about which she had complained (comp. ¶ 48). The plaintiff has not alleged, nor is there any evidence that, she was instructed by Chief Christy to violate any law. Similarly, there is no evidence that the termination of the plaintiff violated any criminal law. The plaintiff's claim is factually and legally deficient, and the defendants are entitled to summary judgment on this claim.

**Equal Protection**

In paragraph 40 of her complaint, the plaintiff alleges that she was denied equal protection because Administrator Gracely conducted the grievance hearing. To establish a violation of equal protection, the plaintiff must plead and prove that similarly situated persons employed by the City of Travelers Rest were treated differently without any rational basis. *United States v. Roberts*, 915 F.2d 889, 891 (4th Cir. 1990). The plaintiff does not allege, nor is there any evidence that, any other employees of the City of Travelers Rest were treated differently. However, the only evidence is that Administrator Gracely has conducted three appeals in accordance with the procedure established by City Council (Gracely dep. 24, 39). Accordingly, the equal protection claim also fails.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motions for summary judgment be granted, and the plaintiff's motion for summary judgment be denied. The defendants' pending nondispositive motions will be held in abeyance pending the district court's disposition of the motions for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot.

s/WILLIAM M. CATOE
United States Magistrate Judge

July 11, 2007

Greenville, South Carolina